F:\wp51\JSS\3477.1_Sikorski V HUMC\Opposition to Sieba MTN to dismiss_2.wpd

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
―――――――――――――――――――――――――――X
CATHERINE V. SIKORSKI AND JOHN SIKORSKI

                                Plaintiffs,         07 Civ 3906 (CLB)(LMS)

  -against-                                     ATTORNEY AFFIDAVIT IN
                                                              OPPOSITION TO MOTION TO
FULTON CHEVROLET-CADILLAC CO., INC.,        DISMISS OF SIEBA, LTD
FULTON CHEVROLET CO., INC., HIGH POINT
CHEVROLET, INC., SIEBA, LTD., FULTON/HIGH
POINT CHEVROLET GROUP HEALTH BENEFIT
PROGRAM and JOHN DOES "1" through "3",

                                Defendants.
―――――――――――――――――――――――――――X

       Jeffrey S.E. Sculley, an attorney duly admitted to practice before the United States District Court, Southern District of New York, affirms under penalty of perjury:

       1.       I am associated with the firm of Rider, Weiner & Frankel, P.C., attorney for the plaintiffs Catherine V. Sikorski and John Sikorski (the "Sikorskis"). I am fully familiar with the facts to which I refer in this affidavit, except such statements alleged to be upon information and belief, the latter of which are believed to be true on the basis of my conversations with opposing counsel and my clients and my review of the file in this matter. As discussed in this affidavit and the accompanying memorandum of law, there are material fact issues precluding the application of Sieba, Ltd. ("Sieba") to dismiss including: the degree of decision making authority and discretion enjoyed by Sieba; and, the apparent breach of its fiduciary duties to the plan or beneficiaries. Plaintiffs have amended their complaint as of right and filed it contemporaneously along with these opposition papers, and will be serving same on defendants' counsel. (A true and accurate copy of the Amended Complaint is annexed hereto as Ex. "A").

2.  The Sikorskis were compelled to bring this action pursuant to the Employees Retirement Income Security Act of 1974 ("ERISA") (29 U.S.C. §1132 (a)(1)(B)) to compel payment of at least $431,636.42 in medical bills due under the Fulton/High Point Chevrolet Group Health Benefit Program (the "Plan") to pay for Mrs. Sikorski's multiple brain surgeries. The Plan was established, maintained or administered by defendants Fulton Chevrolet-Cadillac Co., Inc. ("Fulton Cadillac"), Fulton Chevrolet Co., Inc. ("Fulton Chevrolet") and High Point Chevrolet, Inc. ("High Point") (collectively, the "Plan Sponsors"), and administered by Sieba.

3.  Sieba alleges it was not the Plan, a Plan sponsor or the Plan administrator and, therefore, that the complaint against it should be dismissed. However, the Agreement between Sieba and Fulton Cadillac, Fulton Chevrolet and High Point, which was submitted by Sieba in support of its motion to dismiss (see, Exhibit "C" to Declaration of Peter L. Contini, Article 11, at 8), expressly states that the Plan was administered and operated pursuant to a separate instrument which identified a Plan administrator, which may or may not have been Sieba (see, Memorandum of Law, at Point I).

4.  During an August 3, 2007 telephone conference I was advised by counsel for the Plan and the Plan Sponsors that Sieba exercised broad discretion in evaluating, approving or denying and paying medical benefit claims and was not just a mere clerk processing claims pursuant to the directives and orders of the Plan Sponsors. Counsel also stated that they intended to oppose Sieba's motion by submitting an affidavit of an employee or agent of the Sponsors with personal knowledge that Sieba exercised discretionary authority over the evaluation of claims, the issuance of payments and the management of Plan assets. Upon information and belief, Sieba exercised broad discretion in discharging its duties towards the plan, including, administering and managing the Plan, rendering advice regarding Plan assets, including

whether to secure "tail" coverage for the Plan and managing and disposing of the Plan's assets, including a stop-loss insurance policy issued to the Plan by non-party Avemco Insurance. If it is shown that Sieba exercised such discretion authority, then Sieba was a plan fiduciary under ERISA. (See, Memorandum of Law, at 7-8). As an ERISA fiduciary, Sieba owed a duty to advise the Plan solely in the interest of the Plan's participants and beneficiaries with the same care, skill, prudence, and diligence exercised by a prudent person who is familiar with such matters acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character. Sieba would have breached its fiduciary duty to the Plan and its participants if it ordered or allowed the Avemco stop-loss policy to be terminated without securing "tail" coverage, at a time when Sieba knew or should have known that there were significant outstanding claims (including that of Mrs. Sikosk) against the Plan which could not be paid without such insurance, thereby causing a loss to the Plan and rendering Sieba personally liable for such loss. (See, Id., at 7-10; Ex. "A", Amended Complaint, at ¶¶88-94).

5.   Sieba also asserts that any obligation it had under the Agreement terminated on October 31, 2002 at the purported conclusion of the "run-out service agreement". (See, Contini Declaration, Ex. "C", Art. 9, at 7). The language creating Sieba's obligations under the run-out service agreement provides that "Sieba will be retained for a period of three (3) months from the termination date of this [A]greement". (Id.). However, the Agreement also stated that "Sieba agrees to continue to process claims incurred prior to the termination of the [A]greement for a six (6) month period following the termination of the [A]greement]". (Id.). Thus, Sieba's was required to process claims arising on or before July 31, 2002, until January 31, 2003, rather than October 31, 2002. It is undisputed that the Agreement terminated, and Sieba's obligations under the run-out service agreement commenced, on July 31, 2002. Therefore, Sieba

RIDER, WEINER & FRANKEL, P.C.
P. O. BOX 2280   •   NEWBURGH, N. Y. 12550   •   (845) 562-9100

was obliged to process Mrs. Sikorski's claims because all of these claims were for pre-approved medical services rendered before July 31, 2002 which had been submitted to Sieba before the expiration of the run-out agreement on January 31, 2003. Indeed, Sieba processed and acted upon at least two of Mrs. Sikorski's claims long after the purported October 31, 2002 deadline.

6. As an example of Sieba's discretionary authority over the Plan and that its obligations continued well beyond October 31, 2002, on November 14, 2002 Sieba reviewed and paid a $10,384.00 claim to Epilepsy & Neurophysiology for medical services provided to Mrs. Sikorski on July 12-14, 2002, July 17-18, 2002 and July 31, 2002. (See, True and Accurate copy of Sieba Explanation of Benefits dated November 14, 2002, annexed hereto as Exhibit "B"). On November 21, 2002, Sieba denied payment on a claim from Hackensack University Medical Center ("HUMC") and returned the claim to HUMC because the "charge/service lacks information needed for processing, requesting from [HUMC] a rebill for covered dates of service from 7/11/02 through 7/31/02". (See, True and Accurate copy of Sieba Explanation of Benefits dated November 14, 2002, annexed hereto as Exhibit "C").

7. Sieba has failed to append to its motion papers the critical documents bearing on the issue of its discretion. Sieba has not provided a copy of the trust agreement under which the Plan was created nor has it provided the actual instrument under which the Plan operated as referred to in the Agreeement. Based on conversations with counsel for the Plan and the Plan Sponsors, no one else appears to have copies of these documents. Neither has Sieba provided an affidavit of an individual with personal knowledge regarding the actual day-to-day operation of the Plan and whether Sieba exercised the discretionary authority allowed for, if not actually contemplated, in the Agreement. Finally Sieba has not submitted copies of the "written directives, rules and procedures" developed by the Plan's sponsors which,

Sieba asserts, limited it to ministerial and non-discretionary functions. (See, Sieba Memorandum of Law, at 2).

8.      If Sieba exercised discretionary control or authority in administrating or managing the Plan, rendered advice regarding Plan assets or in managing or disposing of the Plan's assets, then it can be held personally liable as a fiduciary for benefits due to the Sikorskis. (See, Memorandum of Law, at Point II). The extent to which Sieba exercised discretion over the Plan is currently unknown. It is readily apparent that the language of the Agreement would permit Sieba to exercise such discretion. Consequently, dismissal of the complaint is precluded as plaintiffs have not had the opportunity to engage in the discovery necessary to answer this critical question. Granting dismissal is further precluded because the Agreement expressly provides that Sieba's obligations to process claims incurred before the termination of the Agreement, whatever the nature of those obligations may be, continued until January 31, 2003, long after the nascent and incomplete (at this point) factual record indicates that HUMC and other service providers submitted claims to Sieba for medical care provided to Mrs. Sikorski on or before July 31, 2002.

9.  Plaintiffs are entitled to complete pretrial disclosure to ascertain the full extent of Sieba's discretion and decision-making authority, and the extent to which it owed and breached a fiduciary duty, all of which are issues of material fact requiring a denial of Sieba's motion at this premature stage in the litigation.

Dated: August 14, 2007
     New Windsor, NY

Rider, Weiner & Frankel, P.C.
Attorneys for Plaintiffs Catherine V. Sikorski and John Sikorski
655 Little Britain Road
New Windsor, NY 12553
(845) 562-9100

By: _____
Jeffrey S.E. Sculley (JS7658)


TO:  Richard Golden, Esq.
     Burke, Miele & Golden
     Attorneys for Dealership Defendants and Group Health Benefit Program
     30 Matthews Street, Suite 303A
     PO Box 216
     Goshen, NY 10924

     Peter L. Contini, Esq.
     L'Abbate, Balkan, Colavita & Contini, LLP
     Attorneys for Defendant Sieba, Ltd.
     1001 Franklin Avenue
     Garden City, NY 11530

     Steven Kent, Esq.
     Wilson, Elser, Moskowitz, Edelman, & Dicker, LLP
     Attorneys for Avemco Defendants
     150 East 42nd Street
     New York, NY 10017