Exhibit A

F:\WP51\JSS\3477.1_SIKORSKI V HUM\3477.1_AMENDED COMPLAINT_DRAFT9.DOC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————— X

CATHERINE V. SIKORSKI and JOHN SIKORSKI,

                         Plaintiffs,

       -against-

FULTON CHEVROLET-CADILLAC CO., INC.,
FULTON CHEVROLET CO., INC., HIGH POINT
CHEVROLET, INC., FULTON/HIGH POINT
CHEVROLET GROUP HEALTH BENEFIT
PROGRAM, SIEBA, LTD. and JOHN DOES
"1" THROUGH "3", WHOSE IDENTITIES ARE
CURRENTLY UNKNOWN,

                        Defendants.

———————————————————————— X

**AMENDED
COMPLAINT**

7:07-CV-3906
(CLB)(LMS)

       Plaintiffs by their attorneys Rider, Weiner & Frankel, P.C., as and for their amended complaint, allege as follows:

<u>Nature of the Action, Jurisdiction and Venue</u>

       1.     Plaintiffs Catherine V. Sikorski and John Sikorski bring this action pursuant to the Employees Retirement Income Security Act of 1974 ("ERISA") (29 U.S.C. §1132 (a)(1)(B)) and the federal Declaratory Judgment Act, 28 U.S.C. §§2201 and 2202 to protect and preserve their rights to, and to recover benefits due under, the Fulton/High Point Chevrolet Group Health Benefit Program (the "Plan"), which is an "employee welfare benefit plan" and a "multiple employer welfare arrangement," as those terms are defined in ERISA (29 U.S.C. §§1002(1)(A) and 1002(40)(A), respectively), sponsored and established or maintained by defendants Fulton Chevrolet-Cadillac Co.,

1

Inc. ("Fulton Cadillac"), Fulton Chevrolet Co., Inc. ("Fulton Chevrolet") and High Point Chevrolet, Inc. ("High Point"), and administered by Sieba, Ltd. ("Sieba") for the purpose of "providing for its participants or their beneficiaries . . . medical, surgical, or hospital care or benefits in the event of sickness . . ." (29 U.S.C. §1002(1)(A)). Plaintiffs also assert claims on behalf of the Plan against defendants Fulton Cadillac, Fulton Chevrolet, High Point and Sieba for breaches of their duties as fiduciaries, thereby causing a loss to the Plan. Plaintiffs seek to recover judgment against defendants Fulton Cadillac, Fulton Chevrolet, High Point, the Plan and Sieba for unpaid benefits together with statutory attorney's fees and costs.

2.    Jurisdiction of this Court is based upon 28 U.S.C. §1331 and 29 U.S.C. §1132 (a)(1)(B), which provides in pertinent part that "a civil action may be brought . . . by a plan participant or beneficiary . . . to recover benefits due to him under the terms of his plan . . .." Personal jurisdiction over defendants is based upon 29 U.S.C. §1132(e)(2), which provides in pertinent part that if "an action under [ERISA] is brought in a district court of the United States, it may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found, and process may be served in any other district where a defendant resides or may be found. Plaintiffs are residents of Sullivan County, New York, within the Southern District of New York.

3.    Upon information and belief, the Plan was administered, and several of the defendants reside, in Orange County, New York, within the Southern District of New York. The breach giving rise to the claims herein took place in Sullivan County, New York, within the Southern District of New York.

2

## The Parties

4.      Plaintiff Catherine V. Sikorski is a citizen of the State of New York, with a residence at 355 Kalin Weber Road, Glen Spey, New York.

5.      Plaintiff John Sikorski is a citizen of the State of New York, with a residence at 355 Kalin Weber Road, Glen Spey, New York.

6.      Defendant Fulton Cadillac is, upon information and belief, a New York corporation organized and existing pursuant to New York State law with a principal business address at Route 6 and 17M, Post Office Box 519, Middletown, New York.

7.      Defendant Fulton Chevrolet is, upon information and belief a New York corporation organized and operated pursuant to New York state law with a principal business address at Route 6 and 17M, Post Office Box 519, Middletown, New York.

8.      Defendant High Point is, upon information and belief, a New Jersey corporation organized and existing pursuant to New Jersey state law with a principal business address at 500 Route 23, Sussex, New Jersey.

9.      Defendant Sieba is, upon information and belief, a New York corporation organized and existing pursuant to New York state law with a principal place of business at 111 Grant Avenue, Suite 100, Post Office Box 5000, Endicott, New York.

10.      The Plan is, upon information and belief, an employee welfare benefit plan and a multiple employer welfare arrangement under ERISA, sponsored and established or maintained by Fulton Cadillac, Fulton Chevrolet and High Point with a principal business address at Route 6 and 17M, Post Office Box 519, Middletown, New York.

3

11.    The defendants John Doe "1" through "3" are, upon information and belief, the designated associations, committees, joint boards of trustees or similar groups of representatives of Fulton Cadillac, Fulton Chevrolet and High Point which established or maintained the Plan, and are "plan sponsors", as that term is defined in 29 U.S. C. §29 U.S.C. §1002(16)(B), but whose true identities and addresses are currently unknown to the plaintiffs.

### Facts Pertinent To Each Claim For Relief

12.    John Sikorski began working for High Point as an auto mechanic in or about December 1999.

13.    In or about September 2000 Fulton Cadillac, Fulton Chevrolet and High Point, upon information and belief, hired defendant Sieba to serve as a plan administrator. A contract (the "Agreement") was entered for that purpose, requiring Sieba to provide the services necessary to approve and pay for medical services provided to Plan participants, such as John and Catherine Sikorski. These services included, *inter alia*, establishing a list of participants, examining claims submitted by participants, determining eligibility for the reimbursement of covered expenses and issuing claim checks and explanations of benefits to Plan participants and those who provide medical services to such participants, and otherwise paying or overseeing the payment for such services.

14.    Upon information and belief, sometime after the execution of the Agreement, the Plan, Fulton Chevrolet, Fulton Cadillac and High Point entered into a contract with non-party Avemco Insurance Company to provide stop-loss insurance coverage to reimburse the Plan for expenses the Plan was obligated to pay to health-care providers on behalf of Plan participants and beneficiaries in excess of an established amount.

4

15.    In or about February 2000 Mr. Sikorski, on behalf of himself and his wife Catherine V. Sikorski, enrolled in the Plan and High Point began deducting Plan premiums from his paycheck.

16.    At all relevant times, John Sikorski worked an average of at least 30 hours per week and was a "covered employee" under the terms of the Plan and Mrs. Sikorski was an eligible "dependent" based on her marriage to Mr. Sikorski, thereby entitling her to health-care benefits pursuant to the Plan.

17.    High Point deducted Plan premiums amounting to $284.36 in 2001, $3,849.92 in 2002 and $588.30 in 2003, until Mr. Sikorski terminated his employment with High Point in or about February 2003.

18.    Under the terms of the Plan, Mr. and Mrs. Sikorski were each entitled to a maximum lifetime health-care benefit of $2,000,000.00 for covered medical expenses, such expenses including "[r]oom and board in a Hospital," "[a]ll necessary medical services and supplies for the treatment of the patient in a Hospital," "[c]harges for medical care and treatment and/or surgery performed by a Physician," [a]nesthesia, including the charge for administration" and [d]iagnostic laboratory and x-ray services."

19.    Mr. and Mrs. Sikorski were participants and beneficiaries under the Plan entitled to medical coverage under the terms of the Plan.

20.    Under the terms of the Plan, Mr. and Mrs. Sikorski were required to obtain pre-authorization at least seven (7) working days prior to undergoing any medical procedure or receiving any treatment as a hospital inpatient.

5

21.    Catherine Sikorski was first diagnosed with epilepsy when she was approximately eight years old. She experienced only nocturnal seizures until 1998 when she began to suffer waking seizures.

22.    In approximately 1998 Mrs. Sikorski underwent surgery to the left side of her brain above the temple in order to remedy her waking seizures. Although this surgery was briefly successful, Mrs. Sikorski began experiencing seizures within two months of the surgery. These renewed seizures gradually increased in intensity until they were categorized by her physicians as being of the grand mal variety.

23.    In or about May 2002, Mrs. Sikorski's physicians determined that she required brain surgery, and associated medical care and treatment, on the left temporal area of her brain to remove nerve blockage to remedy a neural transmission interruption that was causing Mrs. Sikorski to suffer grand mal seizures.

24.    In or about May 2002, Sieba, on its behalf or on behalf of the Plan, was notified that Mrs. Sikorski would be hospitalized in either late June or July 2002 for brain surgery at Hackensack University Medical Center ("HUMC") and pre-authorization for such surgery, and all associated medical care and treatment, was requested.

25.    In or about May 2002 Sieba, on its behalf and/or on behalf of the Plan, acknowledged receipt of the notification and request for pre-authorization of Mrs. Sikorski's surgery, and all associated medical care and treatment.

26.    On or about June 28, 2002, Sieba, on its behalf or on behalf of the Plan, pre-authorized Mrs. Sikorski's surgery, and all associated medical care and treatment.

6

27.    Upon information and belief, on or about June 27, 2002, John Worts, who is the President of Fulton Chevrolet and Fulton Cadillac and the father of Tom Worts, President of High Point, decided to terminate medical and prescription drug coverage offered under the Plan effective July 31, 2002.

28.    In or about the week of June 28, 2002, Fulton Chevrolet, Fulton Cadillac and High Point informed Mr. Sikorski and his fellow employees that their health-care coverage under the Plan would be terminated as of July 31, 2002.

29.    Upon information and belief, in or about the week of June 28, 2002, Mr. Sikorski reminded Kelly Worts, the daughter of Fulton President John Worts, and the employee benefits Manager for the High Point dealership, of Mrs. Sikorski's upcoming hospitalization and surgery. Mrs. Worts verified that Mrs. Sikorski's surgery would be covered and advised Mr. Sikorski not to be concerned because all expenses related to Mrs. Sikorski's hospitalization, surgery and treatment would "be taken care of".

30.    Upon information and belief, in or about July 2002, Mr. Sikorski, along with his fellow employees at both Fulton dealerships and High Point, elected health care coverage under Horizon Blue Cross and Blue Shield to commence on or about August 1, 2002.

31.    Catherine Sikorski was admitted to HUMC as an inpatient on or about July 11, 2002 and remained an inpatient until her release on or about August 6, 2002.  She duly advised the hospital and her other providers that she was insured under the Plan.

32.    Catherine Sikorski underwent preliminary brain surgery at HUMC on or about July 11, 2002 to implant electrodes in order to enable her physicians to pinpoint the cause of the nerve blockage and resulting grand mal seizures in preparation for the corrective surgery itself.

7

33.    On or about November 14, 2002, approximately three and one half months after plaintiffs' health-care coverage under the Plan was allegedly terminated, Sieba reviewed and paid a $10,384.00 claim for a portion of the above medical services provided to Mrs. Sikorski.

### First Claim for Relief against the Plan to Recover
### Benefits Under ERISA Pursuant to 29 U.S.C. §§1132

34.    Plaintiffs repeat and reallege their allegations in Paragraphs "1" through "33" above as though set forth fully herein.

35.    John Sikorski at all relevant times was an employee of High Point who was "eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization" and was therefore a Plan participant pursuant to 29 U.S.C. §1002(7).

36.    Catherine V. Sikorski was designated by Mr. Sikorski, in his role as a Plan participant, and was therefore entitled to a benefit under the Plan as a Plan beneficiary pursuant to 29 U.S.C. §1002(8).

37.    At all relevant times, Mr. Sikorski was a Plan participant and Mrs. Sikorski was a Plan beneficiary as those terms are used in 29 U.S.C. §1132 (a)(1)(B) and 29 U.S.C. §1132(a)(3), thereby entitling them to bring this action "to recover benefits due to [them] under the terms of [the] plan" and "to enjoin any act or practice which violates any provision of this subchapter [of ERISA] or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."

38.    Defendant Plan has failed to pay for benefits due to Plaintiffs under the terms of the Plan, despite due demand, totaling no less than $431,636.42, thereby breaching its duty to plaintiffs..

8

39. By reason of the refusal or failure of the defendant Plan to pay the benefits due, Plaintiffs have been damaged in a principal amount to be determined but in no event less than $431,636.42.

40. Plaintiffs also seek to recover attorney's fee and costs in an amount to be determined, pursuant to 29 U.S.C. §1132(g)(1).

## Second Claim for Relief against Fulton Chevrolet as Plan Administrator
## to Recover Benefits Under ERISA Pursuant to 29 U.S.C. §§1132

41. Plaintiffs repeat and reallege their allegations in Paragraphs "1" through "40" above as though set forth fully herein.

42. Upon information and belief, at all relevant times Fulton Chevrolet was the Administrator of the Plan, as the term "Administrator" is defined in 29 U.S.C. §1002(16)(a)(ii) and as such owed a duty to timely evaluate, approve and tender payment for all covered claims submitted for medical services provided to Plan participants, such as plaintiffs.

43. Upon information and belief, at all relevant times defendant Fulton Chevrolet exercised discretionary control and management over the Plan and exercised control over the management and disposition of its assets.

44. At all relevant times, Fulton Chevrolet was a fiduciary with respect to the Plan pursuant to 29 U.S.C. §1109.

45. Defendant Fulton Chevrolet has failed to pay for benefits due to Plaintiffs under the terms of the Plan, despite due demand, totaling no less than $431,636.42, thereby breaching its duty to plaintiffs.

9

46.    By reason of the refusal or failure of the defendant Fulton Chevrolet to pay the benefits due, Plaintiffs have been damaged in a principal amount to be determined but in no event less than $431,636.42.

47.    Plaintiffs also seek to recover attorney's fee and costs of action in an amount to be determined, pursuant to 29 U.S.C. §1132(g)(1).

### Third Claim for Relief against Fulton Cadillac as Plan Administrator to Recover Benefits Under ERISA Pursuant to 29 U.S.C. §§1132

48.    Plaintiffs repeat and reallege their allegations in Paragraphs "1" through "47" above as though set forth fully herein.

49.    Upon information and belief, at all relevant times Fulton Cadillac was the Administrator of the Plan, as the term "Administrator" is defined in 29 U.S.C. §1002(16)(a)(ii) and as such owed a duty to timely evaluate, approve and tender payment for all covered claims submitted for medical services provided to Plan participants, such as plaintiffs.

50.    Upon information and belief, at all relevant times defendant Fulton Cadillac exercised discretionary control and management over the Plan and exercised control over the management and disposition of its assets.

51.    At all relevant times, Fulton Cadillac was a fiduciary with respect to the Plan pursuant to 29 U.S.C. §1109.

52.    Defendant Fulton Cadillac has failed to pay for benefits due to Plaintiffs under the terms of the Plan, despite due demand, totaling no less than $431,636.42, thereby breaching its duty to plaintiffs.

10

53.     By reason of the refusal or failure of the defendant Fulton Cadillac to pay the benefits due, Plaintiffs have been damaged in a principal amount to be determined but in no event less than $431,636.42.

54.     Plaintiffs also seek to recover attorney's fee and costs of action in an amount to be determined, pursuant to 29 U.S.C. §1132(g)(1).

### Fourth Claim for Relief against High Point as Plan Administrator
### to Recover Benefits Under ERISA Pursuant to 29 U.S.C. §§1132

55.     Plaintiffs repeat and reallege their allegations in Paragraphs "1" through "54" above as though set forth fully herein.

56.     Upon information and belief, at all relevant times High Point was the Administrator of the Plan, as the term "Administrator" is defined in 29 U.S.C. §1002(16)(a)(ii) and as such owed a duty to timely evaluate, approve and tender payment for all covered claims submitted for medical services provided to Plan participants, such as plaintiffs.

57.     Upon information and belief, at all relevant times defendant High Point exercised discretionary control and management over the Plan and exercised control over the management and disposition of its assets.

58.     At all relevant times, High Point was a fiduciary with respect to the Plan pursuant to 29 U.S.C. §1109.

59.     Defendant High Point has failed to pay for benefits due to Plaintiffs under the terms of the Plan, despite due demand, totaling no less than $431,636.42, thereby breaching its duty to plaintiffs.

11

60.    By reason of the refusal or failure of the defendant High Point to pay the benefits due, Plaintiffs have been damaged in a principal amount to be determined but in no event less than $431,636.42.

61.    Plaintiffs also seek to recover attorney's fee and costs of action in an amount to be determined, pursuant to 29 U.S.C. §1132(g)(1).

### Fifth Claim for Relief against Sieba as Plan Administrator
### to Recover Benefits Under ERISA Pursuant to 29 U.S.C. §§1132

62.    Plaintiffs repeat and reallege their allegations in Paragraphs "1" through "61" above as though set forth fully herein.

63.    Upon information and belief, at all relevant times Sieba was the Administrator of the Plan, as the term "Administrator" is defined in 29 U.S.C. §1002(16)(a)(i) and as such owed a duty to timely evaluate, approve and tender payment for all covered claims submitted for medical services provided to Plan participants, such as plaintiffs.

64.    Upon information and belief, at all relevant times defendant Sieba exercised discretionary control and management over the Plan and exercised control over the management and disposition of its assets.

65.    Upon information and belief, at all relevant times Sieba was a fiduciary with respect to the Plan pursuant to 29 U.S.C. §1109.

66.    Defendant Sieba has failed to pay for benefits due to Plaintiffs under the terms of the Plan, despite due demand, totaling no less than $431,636.42, thereby breaching its duty to plaintiffs.

12

67.    By reason of the refusal or failure of the defendant Sieba to pay the benefits due, Plaintiffs have been damaged in a principal amount to be determined but in no event less than $431,636.42.

68.    Plaintiffs also seek to recover attorney's fee and costs of action in an amount to be determined, pursuant to 29 U.S.C. §1132(g)(1).

### Sixth Claim for Relief against John Does "1" through "3"as Plan Administrators to Recover Benefits Under ERISA Pursuant to 29 U.S.C. §§1132

69.    Plaintiffs repeat and reallege their allegations in Paragraphs "1" through "68" above as though set forth fully herein.

70.    Upon information and belief, at all relevant times John Does "1" thorugh "3" were the Administrators of the Plan, as the term "Administrator" is defined in 29 U.S.C. §1002(16)(a)(i) and as such owed a duty to timely evaluate, approve and tender payment for all covered claims submitted for medical services provided to Plan participants, such as plaintiffs.

71.    Upon information and belief, at all relevant times defendant John Does "1" through "3" exercised discretionary control and management over the Plan and exercised control over the management and disposition of its assets.

72.    Upon information and belief, at all relevant times John Does "1" through "3" were fiduciaries with respect to the Plan pursuant to 29 U.S.C. §1109.

73.    Defendant John Does "1" through "3" have failed to pay for benefits due to Plaintiffs under the terms of the Plan, despite due demand, totaling no less than $431,636.42, thereby breaching their duties to plaintiffs.

13

74.    By reason of the refusal or failure of the defendants John Does "1" through "3" to pay the benefits due, Plaintiffs have been damaged in a principal amount to be determined but in no event less than $431,636.42.

75.    Plaintiffs also seek to recover attorney's fee and costs of action in an amount to be determined, pursuant to 29 U.S.C. §1132(g)(1).

**Seventh Claim for Relief against Plan Sponsors, Fulton Chevrolet, Fulton Cadillac and High Point to Recover Benefits Under ERISA Pursuant to 29 U.S.C. §1132**

76.    Plaintiffs repeat and reallege their allegations in paragraphs "1" through "75" above as though set forth fully herein.

77.    Upon information and belief, at all relevant times defendants Fulton Chevrolet, Fulton Cadillac and High Point were "plan sponsors", as that term is defined in 29 U.S. C. §29 U.S.C. §1002(16)(B), and, as such, owed a duty to ensure that the Plan was sufficiently funded to permit the payment of all covered claims submitted for medical services provided to Plan participants, such as plaintiffs, and are liable for all claims due under the Plan to the extent that the Plan fails or refuses to pay such claims.

78.    The Plan has failed to pay the benefits due to plaintiffs under the terms of the Plan, despite due demand, thereby breaching its duty to the Plaintiffs.

79.    Defendants Fulton Chevrolet, Fulton Cadillac and High Point have failed to pay the benefits due to plaintiffs under the terms of the Plan, despite due demand, thereby breaching their duties as Plan Sponsors to the Plaintiffs.

80.    By reason of the failure of the defendants Fulton Chevrolet, Fulton Cadillac and High

14

Point to pay the benefits due, Plaintiffs have been damaged in a principal amount to be determined but in no event less than $431,636.42.

81.    Plaintiffs also seek to recover their reasonable attorney's fee and costs of action in an amount to be determined pursuant to 29 U.S.C. §1132(g)(1).

### Eighth Claim for Relief against Plan Sponsors, John Does "1" through "3" to Recover Benefits Under ERISA Pursuant to 29 U.S.C. §1132

82.    Plaintiffs repeat and reallege their allegations in paragraphs "1" through "81" above as through set forth fully herein.

83.    Upon information and belief, at all relevant times defendants John Does "1" through "3" were "plan sponsors", as that term is defined in 29 U.S.C. §29 U.S.C. §1002(16)(B), and, as such, owed a duty to ensure that the Plan was sufficiently funded to permit the payment of all covered claims submitted for medical services provided to Plan participants, such as plaintiffs, and are liable for all claims due under the Plan to the extent that the Plan fails or refuses to pay such claims.

84.    The Plan has failed to pay the benefits due to plaintiffs under the terms of the Plan, despite due demand, thereby breaching their duties to the Plaintiffs.

85.    Defendants John Does "1" through "3" have failed to pay the benefits due to plaintiffs under the terms of the Plan, despite due demand, thereby breaching their duties as Plan Sponsors to the Plaintiffs.

86.    By reason of the failure of the defendants John Does "1" through "3" to pay the benefits due, Plaintiffs have been damaged in a principal amount to be determined but in no event less than $431,636.42.

15

87.     Plaintiffs also seek to recover their reasonable attorney's fee and costs of action in an amount to be determined pursuant to 29 U.S.C. §1132(g)(1).

### Ninth Claim for Relief against Sieba
### for Breach of Fiduciary Duty to Recover Benefits
### Under ERISA Pursuant to 29 U.S.C. §§1132 and 1109

88.     Plaintiffs repeat and reallege their allegations in Paragraphs "1" through "87" above as though set forth fully herein.

89.     Upon information and belief, at all relevant times defendant Sieba exercised discretionary control and management over the Plan, rendered advice regarding Plan assets, specifically with respect to the Avemco stop-loss insurance policy, and exercised control over the management and disposition of Plan assets.

90.     Upon information and belief, at all relevant times, Sieba was a "fiduciary", as that term is defined in 29 U.S.C. §1002(21)(A), of the Plan pursuant to 29 U.S.C. §1109 which provides that a plan fiduciary breaching an obligation imposed by ERISA "shall be personally liable to make good to such plan any losses to the plan resulting from ... such breach...."

91.     As a fiduciary, Sieba owed a duty to advise the Plan solely in the interest of the Plan's participants and beneficiaries with the same care, skill, prudence, and diligence exercised by a prudent person who is familiar with such matters acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character.

92.     Upon information and belief, by failing in its duty to competently advise the Plan, Sieba allowed or directed the Plan to terminate a valuable Plan asset, to wit: the Avemco stop-loss policy, without obtaining "tail" insurance to cover outstanding claims, including that of Mrs.

16

Sikorski, while Sieba knew, or reasonably should have known, that the Plan would be unable to satisfy such claims without insurance coverage, thereby causing a loss to the Plan.

93.    By reason of its breach of its fiduciary duty, Sieba has damaged the Plan in a principal amount to be determined but in no event less than $431,636.42; and Sieba is jointly and severally, as well as personally, liable to the Plan for the total amount of such loss.

94.    Plaintiffs, as Plan participants and beneficiaries (as those terms are used in 29 U.S.C. §1132(a)(2)), accordingly bring this claim on behalf of the Plan against defendant Sieba; and to obtain an order directing said defendant to account and pay to the Plan all amounts due and owing; and for a judgment ordering the Plan to satisfy all of its outstanding losses, including Plaintiffs' claim for Plan benefits in a principal amount to be determined but in no event less than $431,636.42.

### Tenth Claim for Relief against Fulton Chevrolet, Fulton Cadillac and High Point for Breach of Fiduciary Duty to Recover Benefits Under ERISA Pursuant to 29 U.S.C. §§1132 and 1109

95.    Plaintiffs repeat and reallege their allegations in Paragraphs "1" through "94" above as though set forth fully herein.

96.    Upon information and belief, at all relevant times defendants Fulton Chevrolet, Fulton Cadillac and High Point exercised discretionary control and management over the Plan, made decisions regarding Plan assets, specifically with respect to the Avemco stop-loss insurance policy, and exercised control over the management and disposition of Plan assets.

97.    Upon information and belief, at all relevant times Fulton Chevrolet, Fulton Cadillac and High Point were each a "fiduciary", as that term is defined in 29 U.S.C. §1002(21)(A), of the Plan pursuant to 29 U.S.C. §1109 which provides that a plan fiduciary breaching an obligation

17

imposed by ERISA "shall be personally liable to make good to such plan any losses to the plan resulting from ... such breach...."

98.    As fiduciaries, Fulton Chevrolet, Fulton Cadillac and High Point each owed a duty to make decisions regarding the Plan solely in the interest of the Plan's participants and beneficiaries with the same care, skill, prudence, and diligence exercised by a prudent person who is familiar with such matters acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character.

99.    Upon information and belief, Fulton Chevrolet, Fulton Cadillac and High Point each failed its duty to make competent decisions by deciding to terminate a valuable Plan asset, the Avemco stop-loss policy, without obtaining "tail" insurance to cover outstanding claims, including that of Mrs. Sikorski, while Fulton Chevrolet, Fulton Cadillac and High Point each knew, or reasonably should have known, that the Plan would be unable to satisfy such claims without insurance coverage, thereby causing a loss to the Plan.

100.    By reason of its breach of its fiduciary duty, Fulton Chevrolet, Fulton Cadillac and High Point have each damaged the Plan in a principal amount to be determined but in no event less than $431,636.42; and Fulton Chevrolet, Fulton Cadillac and High Point are jointly and severally, as well as personally, liable to the Plan for the total amount of such loss.

101.    Plaintiffs, as Plan participants and beneficiaries (as those terms are used in 29 U.S.C. §1132(a)(2)), accordingly bring this claim on behalf of the Plan against defendants Fulton Chevrolet, Fulton Cadillac and High Point; and to obtain an order directing said defendants to account and pay to the Plan all amounts due and owing; and for a judgment ordering the Plan to satisfy all of its

18

outstanding losses, including Plaintiffs' claim for Plan benefits in a principal amount to be determined but in no event less than $431,636.42.

### Eleventh Claim for Relief against John Does
### "1" through "3" for Breach of Fiduciary Duty to Recover
### Benefits Under ERISA Pursuant to 29 U.S.C. §§1132 and 1109

102.    Plaintiffs repeat and reallege their allegations in Paragraphs "1" through "101" above as though set forth fully herein.

103.    Upon information and belief, at all relevant times defendants John Does "1" through "3" exercised discretionary control and management over the Plan, made decisions regarding Plan assets, specifically with respect to the Avemco stop-loss insurance policy, and exercised control over the management and disposition of Plan assets.

104.    Upon information and belief, at all relevant times John Does "1" through "3" were each a "fiduciary", as that term is defined in 29 U.S.C. §1002(21)(A), of the Plan pursuant to 29 U.S.C. §1109 which provides that a plan fiduciary breaching an obligation imposed by ERISA "shall be personally liable to make good to such plan any losses to the plan resulting from ... such breach...."

105.    As fiduciaries, John Does "1" through "3" each owed a duty to make decisions regarding the Plan solely in the interest of the Plan's participants and beneficiaries with the same care, skill, prudence, and diligence exercised by a prudent person who is familiar with such matters acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character.

106.    Upon information and belief, John Does "1" through "3" each failed its duty to make competent decisions by deciding to terminate a valuable Plan asset, the Avemco stop-loss policy,

19

without obtaining "tail" insurance to cover outstanding claims, including that of Mrs. Sikorski, while John Does "1" through "3" each knew, or reasonably should have known, that the Plan would be unable to satisfy such claims without insurance coverage, thereby causing a loss to the Plan.

107.    By reason of its breach of its fiduciary duty, John Does "1" through "3" have each damaged the Plan in a principal amount to be determined but in no event less than $431,636.42; and John Does "1" through "3" are jointly and severally, as well as personally, liable to the Plan for the total amount of such loss.

108.    Plaintiffs, as Plan participants and beneficiaries (as those terms are used in 29 U.S.C. §1132(a)(2)), accordingly bring this claim on behalf of the Plan against defendants John Does "1" through "3"; and to obtain an order directing said defendants to account and pay to the Plan all amounts due and owing; and for a judgment ordering the Plan to satisfy all of its outstanding losses, including Plaintiffs' claim for Plan benefits in a principal amount to be determined but in no event less than $431,636.42.

### Twelfth Claim for Relief against the Plan, Fulton Chevrolet, Fulton Cadillac, High Point and for Declaratory Judgment; and otherwise under ERISA for Specific Performance

109.    Plaintiffs repeat and reallege their allegations in paragraphs "1" through "108" above as though set forth fully herein.

110.    The liability of the Plan and its sponsors, Fulton Chevrolet, Fulton Cadillac and High Point, as well as Sieba, is predicated upon their failure and refusal, despite due demand, to pay for benefits due to John and Catherine V. Sikorski under the terms of the Plan and the Agreement between Sieba and Fulton Chevrolet, Fulton Cadillac and High Point.

RIDER, WEINER & FRANKEL, P.C.
P.O. BOX 2280   •   NEWBURGH, N.Y. 12550   •   (845) 562-9100

111.    Accordingly, there exist actual disputes and controversies between plaintiffs and Defendants relating to material and valuable rights of Plaintiffs which are ripe for adjudication.

112.    Pursuant to the Federal Declaratory Judgment Act, plaintiffs request a judgment enforceable against all defendants jointly and severally declaring that Sieba, Fulton Chevrolet, Fulton Cadillac, High Point and the Plan are liable to plaintiffs jointly and severally in an amount to be determined at trial, but totaling no less than $431,636.42; and that plaintiffs have an order directing specific performance of the agreement and payment by defendants to HUMC and plaintiffs' other providers.

### Thirteenth Claim for Relief against the Plan, Sieba and John Does "1" through "3"for Declaratory Judgment; and otherwise under ERISA for Specific Performance

113.    Plaintiffs repeat and reallege their allegations in paragraphs "1" through "112" above as though set forth fully herein.

114.    The liability of the Plan and its sponsors, John Does "1" through "3", as well as Sieba, is predicated upon their failure and refusal, despite due demand, to pay for benefits due to John and Catherine V. Sikorski under the terms of the Plan and the Agreement between Sieba and Fulton Chevrolet, Fulton Cadillac and High Point.

115.    Accordingly, there exist actual disputes and controversies between plaintiffs and defendants relating to material and valuable rights of plaintiffs which are ripe for adjudication.

116.    Pursuant to the Federal Declaratory Judgment Act, plaintiffs request a judgment enforceable against all defendants jointly and severally declaring that Sieba, John Does "1" through "3" and the Plan are liable to plaintiffs jointly and severally in an amount to be determined at trial,

21

but totaling no less than $431,636.42; and that plaintiffs have an order directing specific performance

of the agreement and payment by defendants to HUMC and plaintiffs' other providers.

**WHEREFORE,** Plaintiffs Catherine V. Sikorski and John Sikorski demand judgment as set

forth above against Defendants, together with interest, attorney's fees pursuant to statute and punitive

damages; and such other relief as the Court deems proper.

Dated: August 14, 2007          Rider, Weiner & Frankel, P.C.
      New Windsor, NY          Attorneys for Plaintiffs
                         655 Little Britain Road
                         New Windsor, NY 12553
                         (845) 562-9100

                         By: _____
                            Jeffrey S.E. Sculley (JS 7658)

22