UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____X
CATHERINE V. SIKORSKI AND JOHN SIKORSKI

                        Plaintiffs,        07 Civ 3906 (CLB)(LMS)

   -against-

FULTON CHEVROLET-CADILLAC CO., INC.,
FULTON CHEVROLET CO., INC., HIGH POINT
CHEVROLET, INC., SIEBA, LTD., FULTON/HIGH
POINT CHEVROLET GROUP HEALTH BENEFIT
PROGRAM and JOHN DOES "1" through "3",

                        Defendants.
_____X


## SIKORSKIS' MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS OF SIEBA, LTD.


                        Rider, Weiner & Frankel, P.C.
                        655 Little Britain Road
                        New Windsor, NY 12553
                        Attorneys for Plaintiffs Catherine V. Sikorski
                            and John Sikorski
                        (845) 562-9100


Of Counsel:
Jeffrey S.E. Sculley

Preliminary Statement

Plaintiffs Catherine V. Sikorski and John Sikorski (the "Sikorskis"), submit this memorandum of law in opposition to the pre-answer motion of defendant Sieba, Ltd. to dismiss the Sikorskis' complaint to recover medical costs incurred by Mrs. Sikorski for health-care services related to multiple brain surgeries. The Sikorskis were participants in the Fulton/High Point Chevrolet Group Health Benefit Program (the "Plan"), an "employee welfare benefit plan" and a "multiple employer welfare arrangement," as those terms are defined in the Employees Retirement Income Security Act of 1974 ("ERISA") (29 U.S.C. §§1002(1)(A) and 1002(40)(A), respectively). The Plan was sponsored by Mr. Sikoski's former employer, High Point Chevrolet, Inc. ("High Point"), as well as Fulton Chevrolet-Cadillac Co., Inc. ("Fulton Cadillac") and Fulton Chevrolet Co., Inc. ("Fulton Chevrolet") (collectively, the "Plan Sponsors"). Defendant Sieba, Ltd. entered into an agreement with High Point, Fulton Cadillac and Fulton Chevrolet under which Sieba agreed to act as the administrator to evaluate, deny or approve, and then pay accepted claims under the Plan.

It cannot honestly be disputed that during June and July 2002, when the medical costs at issue were incurred, Mr. and Mrs. Sikorski were enrolled in the Plan and were entitled to have the Plan pay for the cost of Mrs. Sikorski's medical care and surgeries. Nor can it be reasonably alleged that the Plan, the Plan Sponsors (and their principal corporate officers) or Sieba were not given prior notice of Mrs. Sikorski's hospitalization and the need for multiple surgeries to correct a progressive seizure disorder. It appears that Sieba will be dispute that the Plan, the Plan Sponsors and Sieba have repeatedly and wrongly refused or failed to pay the outstanding bill for Mrs. Sikorski's medical care totaling approximately $431,636.42.

Sieba seeks to have the complaint dismissed arguing that it is not the Plan sponsor or the Plan administrator and that only such entities, as well as Plan fiduciaries, may be liable under 29 U.S.C. 1131(a)(1)(B). Additionally, Sieba asserts it exercised exclusively ministerial, rather than discretionary, authority over the Plan's operation and, consequently, cannot be found liable as a Plan fiduciary.

On its face, the Agreement between Sieba and the Plan Sponsors expressly states that the Plan was administered and operated pursuant to a separate instrument which designated a Plan administrator. Therefore the Agreement creates a question of fact regarding who was the designated Plan administrator. Moreover, it cannot be determined as a matter of law, by examining the language of the Agreement, that Sieba exercised exclusively ministerial, rather than discretionary, authority as it evaluated, denied or approved and paid or refused to pay claims under the Plan. As such, dismissal of the complaint is precluded both by the express language of the Agreement and the need for discovery to establish the extent of the discretion exercised by Sieba in administering the Plan.

For a full statement of the relevant facts, the Court is respectfully referred to the Attorney Affidavit of Jeffrey S.E. Sculley served as part of Plaintiffs' opposition to Sieba's motion to dismiss and the amended complaint filed in this matter, copy of which is annexed to such affidavit.

Argument

POINT I

DISMISSAL IS PRECLUDED AS THE DOCUMENTS
SUBMITTED BY SIEBA ESTABLISH THAT A QUESTION OF FACT EXISTS
REGARDING WHETHER SIEBA WAS DESIGNATED AS THE PLAN ADMINISTRATOR.

A motion to dismiss for failure to state claim pursuant to Federal Rule of Civil Procedure 12(b)(6) must be denied except in those rare instances where it appears beyond a doubt that the plaintiff can prove no set of facts under which the plaintiff would be entitled to the relief sought. See, *e.g.*, Swierkiewicz v. Sorema N. A., 534 U.S. 506, 513-14, 122 S.Ct. 992, 998-99, 152 L.Ed.2d 1 (2002) (stating "[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations") (internal quotations omitted). The issue in a 12(b)(6) motion is whether the plaintiff is entitled to offer evidence to support the claims, not whether a plaintiff is likely to ultimately prevail; that is not the test and is not ground for dismissal, even if it appears on the face of the pleading that recovery is very remote and unlikely (which is not true in the present case). *E.g.*, Fernandez v. Chertoff, 471 F.3d 45, 51 (2nd Cir. 2006) (stating appropriate inquiry is not whether plaintiff is likely to prevail, but whether it is entitled to offer evidence supporting claims); see also, *e.g.*, Chance v. Armstrong, 143 F.3d 698, 701 (2nd Cir.1998). A court accepts the allegations set forth in the complaint as true and construes the complaint liberally in favor of the pleader drawing all inferences in its favor. *E.g.*, Jenkins v. McKeithen, 395 U.S. 411, 421-22, 89 S.Ct. 1843, 1849, 23 L.Ed.2d 404, (1969); see also, *e.g.*, Fernandez, *supra,* 471 F.3d at 51.

Under ERISA, the plan administrator is, *inter alia*, "the person specifically so designated by the terms of the instrument under which the plan is operated". 29 U.S.C. §1002(16)(A). Sieba uses this definition to assert that it was not the Plan's administrator because the "Employee Health Plan Booklet" (the "Employee Plan Booklet" or "Booklet") (See, Attorney Declaration of Peter L. Contini, Ex. "B") does not designate it as the administrator. This argument must fail. Sieba correctly states that the Booklet does not identify a Plan administrator. However, based on this true statement, Sieba incorrectly concludes that there was no designated plan administrator. (See, *Id.*, at 1-2). This conclusion cannot stand because it is founded upon the erroneous assumption that the Booklet was the instrument under which the plan operated.

On the contrary, on its face the Booklet establishes that it was not the instrument under which the Plan operated. The first page of the Booklet provides that

> [t]his [B]ooklet is issued merely as a brief description of the coverage provided under the Plan. It should be understood that this [B]ooklet is not a contract and does not contain all [sic] the plan details. <u>The provisions principally affecting you as described herein are subject to the terms, conditions, and provisions of the Plan Document, which is on file with the Plan Administrator</u>.

(emphasis added) (Contini Declaration, Ex. "C", at 1). The above passage makes it absolutely clear (or, in the alternative, raises a question of fact) that: (1) there is a separate "Plan Document", *i.e.*, a written instrument, pursuant to which the Plan was administered and operated; and, (2) within this instrument a "Plan Administrator" was designated. In either event, the identify of the administrator is a critical open factual question precluding dismissal. Consequently, it does not matter that the Booklet failed to designate an administrator.

5

It is reasonable to assume that the Plan's operational instrument is within Sieba's possession and control. Yet, Sieba has failed to produce this instrument. Given that the operational instrument will likely determine whether Sieba was the Plan administrator, and, thereby, whether Sieba can be held liable as such, Sieba's failure to produce this document strongly militates against dismissal.

Moreover, Sieba is arguably designated within the Agreement with the Plan Sponsors as the Plan's administrator. The Agreement states that the parties agree that "Sieba is acting as administrator for the payment of claims pursuant to the Plan". (See, Contini Declaration, Ex. "C", Article 11, at 8). Given the express language in the Booklet and the Agreement, and at this premature stage of the litigation without the benefit of discovery, Sieba has failed to demonstrate as a matter of law that it was not the ERISA Plan Administrator.

## POINT II

### THERE IS A SET OF FACTS WHICH, IF ESTABLISHED, WOULD SUBJECT SIEBA TO LIABILITY, THEREFORE, AS A MATTER OF LAW, SIEBA'S PRE-ANSWER MOTION TO DISMISS MUST BE DENIED.

There is a set of facts recognized at law under which Sieba can be held personally liable to the Plan as a fiduciary, as that term is defined in 29 U.S.C. § 1002(21)(A), for a loss to the Plan caused by a breach of its duty. Plaintiffs assert a claim on behalf of the Plan because

> ". . . by failing in its duty to competently advise the Plan, Sieba allowed or directed the Plan to terminate a valuable Plan asset, to wit: the Avemco stop-loss policy, without obtaining "tail" insurance to cover outstanding claims, including that of Mrs. Sikorski, while Sieba knew, or reasonably should have known, that the Plan would be unable to satisfy such claims without insurance coverage . . .".

(Amended Complaint, at ¶92, annexed as Ex. "A" to Attorney Affidavit of Jeffrey S.E. Sculley). Pursuant to 29 U.S.C. §1109, a plan fiduciary breaching an obligation imposed by ERISA "shall be personally liable to make good to such plan any losses to the plan resulting from ... such breach...." Thus, Sieba can be held personally liable if it was a Plan fiduciary. In turn, Sieba functioned as a Plan fiduciary under 29 U.S.C. §1002(21)(A) if it exercised discretionary control or authority in the administration or management of the Plan, rendered advice regarding Plan assets or the management or disposition of the Plan's assets. See, Via Christi Regional Medical Center, Inc. v. Blue Cross and Blue Shield of Kansas, Inc., 2006 WL 3469544, *9-*11, 39 Employee Benefits Cas. 2132 (D.Kan. 2006) (denying Blue Cross and Blue Shield's ("BCBS")motion for summary judgment on grounds that, by agreeing to provide administrative services to employee benefit plan and by selling stop-loss insurance to employer to cover medical benefits due under its plan, BCBS may have acted as plan fiduciary subjecting it to potential liability for an

7

employee's claim which arose before, and continued after, termination of stop-loss coverage); see also, Blatt v. Marshall and Lassman, 812 F.2d 810, 812 (2nd Cir. 1987) (holding accounting firm principals were ERISA fiduciaries, by virtue of their exercise of actual control over disposition of plan assets, and stating question of fiduciary status under ERISA turns on function performed by putative fiduciary, rather than on title held); LoPresti v. Terwilliger, 126 F.3d 34, 40 (2nd Cir.1997) (stating "Congress intended ERISA's definition of fiduciary to be broadly construed" in holding corporate president to be ERISA fiduciary based on corporations use of moneys deducted from paychecks, which were supposed to be forwarded funds to pension fund, to pay corporation's other creditors). Plaintiffs contend that, in light of the broad construction given to who is a fiduciary under ERISA, they can prove a set of facts establishing Sieba's liability and, consequently, the motion to dismiss should be denied. Denying the motion and permitting discovery to proceed is further warranted because whether Sieba acted as a fiduciary is a functional inquiry which turns on the specific facts of the case rather than on a title ascribed to Sieba.. See, Blatt, *supra*, 812 F.2d at 812.

Although Sieba has appended the Employee Plan Booklet (Contini Declaration, Ex. "B") and its Agreement with the Plan Sponsors (*Id.*, Ex. "C") to its pre-answer motion to dismiss, it has failed to provide the critical documents bearing on the extent of its discretionary authority under the Plan. These documents include: the actual instrument under which the Plan was operated (rather than the Booklet provided by Sieba, see, Point I, *supra*); the trust agreement pursuant to which the Plan was created; and the written directives, rules and procedures developed by the Plan's sponsors which Sieba claims limited it to ministerial, rather than discretionary, actions in administering the Plan.

8

Moreover, the Agreement (Contini Declaration, Ex. "C") does not demonstrate, as a matter of law, that Sieba performed purely ministerial tasks in administrating the Plan. On the contrary, the terms of the Agreement required Sieba to examine all claims submitted for compliance with the terms of the Plan, decide whether to reimburse Plan participants, such as the Sikorskis, for their medical expenses and issue payments and explanations of benefits to participants and service providers. (See, Contini Declaration, Ex. "C", Art. 2, paragraphs "b", "c" and "d", at 7). At a minimum, a review of the Agreement creates a question of fact regarding whether Sieba exercised discretion in discharging these duties. The Agreement actually required Sieba to make the most critical decisions regarding the Plan's administration: the approval or denial of benefit claims. The plausible extent of Sieba's role in administering the Plan is emphasized by the fact that the Agreement provides that "[a]ll benefit payments made under the Plans will be issued by Sieba". (See, *Id.*, Art.7, paragraph "b", at 4). Under the terms of the Agreement it is reasonable to infer that rather than providing mere ministerial services, Sieba functioned on a day-to-day basis as the ERISA Plan Administrator, exercising discretion in controlling and evaluating every claim, from initial review to approving or denying the issuance of payment.

The attorneys for the Plan Sponsors has advised that they have been told by representatives of their clients with personal knowledge that Sieba engaged in more than ministerial tasks in relation to the Plan. (See, Sculley Affidavit, at ¶4). Plaintiffs have no personal knowledge regarding this matter. However, counsel also advised that they intend to oppose Sieba's motion on the basis that Sieba exercised discretionary authority over the evaluation of claims, the issuance of payments and the management of Plan assets and that they were strongly considering submitting an affidavit of an employee or agent of the Sponsors with personal knowledge stating as much. (*Id.*). Sieba, which employs or has access to a

9

person or persons with personal knowledge regarding the day-to-day operation of the Plan, has not provided an affidavit describing the alleged ministerial nature of the tasks performed by Sieba on behalf of the Plan.

Thus, the full extent to which Sieba exercised discretion over the Plan, and, therefore, served as a Plan fiduciary under ERISA, is currently unknown. As discussed above, it is readily apparent that the language of the Agreement did not forbid Sieba from exercising such discretion. Consequently, the complaint should not be dismissed. Plaintiffs must be afforded the opportunity to engage in the discovery necessary to determine the extent to which Sieba exercised discretion in administrating the Plan, and establishing the fiduciary capacity of Sieba.

Regardless of whether Sieba was a Plan fiduciary, granting dismissal should be precluded because the Agreement expressly obligated Sieba to process all claims incurred before the termination of the Agreement until January 31, 2003. (See, Contini Declaration, Ex. "C", Art. 9, at 7). The factual record, even at this early stage without the benefit of discovery, demonstrates that Sieba breached this duty in that it refused to process some claims for medical care provided to Mrs. Sikorski on or before July 31, 2002, while it accepted and processed other claims, and paid at least one such claim, which was submitted to Sieba after the alleged October 31, 2002 cut-off date under the run-out service agreement. (See, Sculley Affidavit, at ¶¶5-6).

<u>Conclusion</u>

For the reasons stated above, plaintiffs Catherine V. Sikorski and John Sikorski requests that this Court issue an order denying the pre-answer motion to dismiss of Sieba, Ltd.; and also ordering the parties to commence discovery pursuant to the scheduling order previously provided to all parties by plaintiffs' counsel; and for such other relief as this Court deems proper.

Dated: August 14, 2007                Respectfully submitted,

_____
Jeffrey S.E. Sculley, Esq. (JS7658)
Rider, Weiner & Frankel, P.C.
Attorneys for Plaintiffs Catherine V. Sikorski
    and John Sikorski
655 Little Britain Road
New Windsor, NY 12553
(845) 562-9100