PRELIMINARY STATEMENT

This memorandum of law is submitted in opposition to the motion to dismiss plaintiffs' complaint of Sieba, Ltd. (herein after "Sieba"). The defendants herein have joined issued by the filing of an answer to the plaintiffs' amended complaint which is being served contemporaneously with the filing of the within opposition papers. The answer of the defendants herein contains a cross-claim against Sieba. Defendants have also filed a third party summons and complaint against Ken Hutchings and the Anchor Group who served as Broker Consultant under the terms of the Service Agreement pursuant to which the Fulton/High Point Chevrolet Employee Benefit Plan was administered.

Sieba seeks a dismissal of plaintiffs' complaint upon the ground that it was not the Plan, the Plan Sponsor or the Plan Administrator and that only those entities may be liable under 29 USC 1132(a)(1)(B). Sieba also contends that it cannot be held liable as a fiduciary under the Plan because it functioned merely in a ministerial capacity and therefore can not be found liable as a Plan fiduciary.

For the reasons set forth herein, as well as in the annexed attorney affidavit, the exhibits annexed thereto, and the affidavit of Lori Pritchard, it is respectfully contended that, at a minimum, a question of fact exists as to the degree of discretionary authority exercised by Sieba pursuant to the services it provided to the Plan and the Plan participants. Accordingly, it is respectfully requested the Sieba's motion to dismiss be denied.

<u>Argument</u>

<u>Point I</u>

A QUESTION OF FACT EXISTS REGARDING WHETHER SIEBA WAS
<u>DESIGNATED THE PLAN ADMINISTRATOR</u>

Pursuant to 29 USC 1002(16)(A) the term "administrator means – (i) the person specifically designated by the terms of the instrument under which the Plan is operated." ERISA does not identify the administrator as the Plan Administrator, it simply defines the term "administrator" and identifies it as the person specifically designated by the terms of the instrument under which the plan is "operated." Sieba has not produced a copy of the Plan Document to establish that it is not the Plan Administrator or that some other entity has been designated the Plan Administrator. However, the Summary Plan Description annexed to the Employee Health Plan Booklet has been produced. And, it indicates that it has been "prepared in compliance with Public Law 93-406 better known as 'Employee Retirement Income Security Act of 1974' (ERISA)." And, according to the Summary Plan Description prepared in compliance with ERISA, the Plan Supervisor & Third Party Administrator for the Plan is designated as W.J. Jones whom Sieba has admitted in its motion papers it replaced. Fulton/High Point Chevrolet is listed as the Plan Sponsor and the Name of the Plan is listed as the Fulton/Highpoint Chevrolet Employee Health Care Plan. This Summary Plan Description appears to be the only Plan Document currently available other than the Employee Health Care Plan Booklet.

Pursuant to a Third-Party Administration Service Agreement (hereinafter the "Service Agreement") entered into in September 2000 between Sieba, Fulton/High Point Chevrolet, and Diversified Concepts, Inc., Sieba agreed to provide certain services.

2

Sieba contends that the Agreement limits Sieba's functions to ministerial and non-discretionary functions which are similar to those delineated in 29 CFR 2509.75-8. Conspicuously omitted from Sieba's recitation of its responsibilities is the Service Agreement's language which mirrors that of language found in 29 USC 1104(a) entitled "Prudent Man Standard" wherein the discharge of fiduciaries duties are set forth.

> Pursuant to 29 USC 1104(a) (1) "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and ... (A) for the exclusive purpose of (i) providing benefits to participants and their beneficiaries."... (B) "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims ... (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III of this chapter."

> Pursuant to the Service Agreement, Sieba

> "shall discharge its duties with respect to the Medical and Dental Plan (a) solely in the interest of participants, (b) for the exclusive purpose of providing benefits to participants, (c) with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters, would use in the conduct of an enterprise of a like character and with like aims, and (d) in accordance with the Plan(s) and this Agreement."

If Sieba's function had been relegated to merely ministerial duties, there would have been no need to include such language in the Agreement because Sieba would not have had any authority to exercise its discretion. The inclusion of this language, at a minimum, establishes a question of fact as to whether Sieba was the Plan Administrator. Significantly, the Agreement also grants to Sieba the authority to provide all reasonable and necessary services ... in administering the benefits provided by the Plan(s) and all claims arising thereunder ..."without limitation." And, an amendment to the Employee Health Benefit Plan Booklet dated June 18, 2002 specifically designates the Plan

Supervisor, Sieba, with the authority to make determinations on requests to review claims. Perhaps most significantly, the Service Agreement specifically authorizes Sieba to control litigation involving a claim for benefits under the Plan. This language clearly grants to Sieba the unqualified authority to decide the disposition of Plan assets.

Although counsel has selectively referenced only portions of the Service Agreement to support its argument that Sieba acted at the bequest of Fulton/Highpoint and that it functions were "quite different" from the administrator identified as a fiduciary who can be liable under 29 USC 1132(a)(1)(B), the foregoing provisions of the various documents establishes the contrary. Additionally, the documents attached to and referred to the annexed attorney affidavit demonstrate that Sieba, in fact, functioned in a "quite different" manner than the picture painted by counsel in its motion papers. Accordingly, it is less than clear that Sieba did not act in a fiduciary capacity. Sieba has not produced any evidence to suggest that Fulton/Highpoint determined eligibility for reimbursement under the terms of the Plan as it argues nor has it produced anything other than its own conclusion that an "application of rules determining eligibility for benefits" which the Department of Labor in 29 CFR 2509.75.08 has concluded is a ministerial function is the same as a requirement to make a "determination of eligibility for reimbursement." In fact, it is readily apparent that the former requires only a ministerial function of applying rules that someone else has considered should be utilized to determine eligibility. Whereas, the latter leaves up to Sieba, as the administrator, the discretion to consider on its own whether, how, and if a claim is eligible for reimbursement. In addition, the Department of Labor has opined that where a "benefit supervisor" has been designated, "who has the final authority to authorize or disallow benefit payments in cases where a

4

dispute exists as to the interpretation of plan provisions relating to eligibility for benefits," a "benefit supervisor would be a fiduciary within the meaning of section 3(21)(A) of the Act." See, 29 CFR 2509.75-8. Here, such authorization was given to Sieba pursuant to both the Plan and the Service Agreement.

Sieba's reliance on the court's decision in *Crocco v. Xerox Corporation*, 137 F.3d 105 (2d Cir. 1998) in support of its claim that it was merely a third party administrator is misplaced. At issue in *Crocco* was whether an employer could be a de facto administrator of a Plan where the Plan had designated a Plan Administrator. In *Crocco*, in addition to there being a Plan administrator, there was also claims administrator identified in a separate agreement. The claims against the claims administrator were dismissed pursuant to 29 USC 1133(2), the employee was entitled to a full and fair review by the Plan Administrator of a decision denying a claim for benefits. In the instant action, the Plan Supervisor (Sieba) was the entity to whom the plan participant could go to review such denials.

Inasmuch as the foregoing demonstrates that Sieba's duties were more than ministerial in nature, the case law relied on by Sieba is unavailing. For example in *Kyle Railways, Inc. v. Pacific Administration Services, Inc.*, 990F.2d 513, 516 (9th Cir. 1993) the Ninth Circuit found that Pacific (the would-be fiduciary) was required to "refer all discretionary questions regarding the payment of claims to Kyle for final decision." The Agreement at issue does not contain any such language. And, in *Nichols v. Metropolitan Life Insurance Co.*, 180 F. Supp2d 413 (W.D.N.Y. 2001), Met Life sought a dismissal because it claimed that it was a paying agent who "performed the ministerial tasks of issuing checks at the direction," and the court agreed. The facts here do not support such

a conclusion. Sieba's reliance on *Terry v. Bayer Corporation*, 145 F.3d 28 (1s Cir. 1998) is similarly misplaced. In *Terry*, Bayer had contracted with a third party, "Northwestern to provide administrative assistance to the Benefit Committee" which had the authority to review disputes and decide appeals. The Service Agreement between Bayer and Northwestern in pertinent part stipulated that "upon receipt of the Plan Sponsor's final decision on claims appeal, [Northwestern] make payment or issue a denial notice in accordance with the Plan Sponsor's decision." *Id.* at 34. The Agreement herein does not contain any such language.

According to the court's holding in *Artandi v. Buzack*, 2004 WL 764907, 4 (S.D.N.Y. 2004) "ERISA cannot be used to impose liability upon third party claim administrators who are not acting as fiduciaries within the meaning of ERISA." The *Artandi* court explained that "when the plan administrator retains discretion to decide disputes, the third party service provider ... is not a fiduciary of the plan, and thus not amenable to suit under ERISA." *Id.* at 4. Conversely, the opposite of that would also be true. It is respectfully submitted that here because Sieba had the authority to control litigation involving claims and the authority to determine appeals while the Service Agreement was in effect, Sieba was acting in as a fiduciary within the meaning of ERISA.

Based upon the foregoing, it is respectfully submitted that a question of fact exists as to whether Sieba was the Plan Administrator and/or whether it provided discretionary functions within the meaning of the ERISA statute such that it may be held liable herein.

Dated: September 7, 2007
      Goshen, New York

                      **Burke, Miele & Golden,LLP**
                      **Attorneys for Defendants,**
                      **Fulton Chevrolet Cadillac Co., Inc.**
                      **Fulton Chevrolet Co., Inc.**
                      **High Point Chevrolet Co., Inc.**
                      **Fulton/High Point Chevrolet Group**
                      **Health Benefit Program**

By:                     _____
                      Phyllis A. Ingram, Esq. (0650)